**BROWN KWON & LAM LLP**
William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
akwon@bkllawyers.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JETNIK SYLA, and <br> BESNIK BERISHA, <br> *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> - against - <br><br> HARD ROCK INTERNATIONAL (USA), INC, <br> HARD ROCK HOTELS, INC. <br> HR HOTEL NYC LLC <br>    d/b/a HARD ROCK HOTEL NEW YORK <br> NYY STEAK LLC <br> NYY STEAK MANHATTAN, LLC and <br> KLAUBER PINTO, <br><br> Defendants. | Case No.: <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> Jury Trial Demanded |

Plaintiffs JETNIK SYLA and BESNIK BERISHA ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants HARD ROCK INTERNATIONAL (USA), INC., HARD ROCK HOTELS, INC., HR HOTEL NYC LLC d/b/a HARD ROCK HOTEL NEW YORK, NYY STEAK LLC, NYY STEAK MANHATTAN, LLC

and KLAUBER PINTO (collectively, "Corporate Defendants"), ("Individual Defendant" and together with Corporate Defendants, "Defendants") and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid overtime wages due to off-the-clock work, (2) unlawfully retained gratuities, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiffs also bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6 §§ 190 *et seq.*, and Article 19 §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1)  unpaid regular and overtime wages due to off-the-clock work, (3) unlawfully retained gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

3.      Plaintiff Besnik Berisha further alleges, pursuant to the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215, that Defendants reduced Plaintiff's schedule and then terminated his employment in retaliation for complaining of Defendants' unlawful wage practices, and seeks from Defendants: (1) economic damages for lost wages, (2) damages for emotional distress, (3) liquidated damages, (4) punitive damages, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.      This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiffs*

#### *Jetnik Syla*

8.      Plaintiff Jetnik Syla is an adult who resides in Westchester County, New York.

9.      Plaintiff Jetnik Syla is a covered employee within the meaning of the FLSA and NYLL.

10.     Plaintiff Jetnik Syla retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

#### *Besnik Berisha*

11.     Plaintiff Besnik Berisha is an adult who resides in Queens County, New York.

12.     Plaintiff Besnik Berisha is a covered employee within the meaning of the FLSA and NYLL.

13.     Plaintiff Besnik Berisha retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

*__Defendants__*

14.     At all relevant times, Defendants the Hard Rock Hotel New York, located at 159 W 48th Street, New York, NY 10036.  Defendants further operate a number of bars and restaurants located inside the Hard Rock Hotel New York, including NYY Steak and NYY Events (hereinafter the "Hard Rock Restaurants").

15.     At all relevant times, Defendants owned and operated the Hard Rock Restaurants as a single integrated enterprise. Specifically, the Hard Rock Restaurants had a common business purpose, shared common ownership and management, engaged in interrelated operations, and had centralized control of labor relations.

16.     At all relevant times, the Hard Rock Restaurants were operated under the same wage and hour policies established by Defendants. Accordingly, Plaintiffs and similarly situated employees at the Hard Rock Restaurants were subject to the same wage and hour policies.

17.     At all relevant times, Defendants jointly employed Plaintiffs and similarly situated employees.

18.     At all relevant times, each Defendant had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

19.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

*__Hard Rock International (USA), Inc.__*

20.     Corporate Defendant Hard Rock International (USA), Inc. is a foreign business corporation organized under the laws of the State of Florida with a principal place of business

located at 5701 Stirling Road, Davie, FL 33314 and an address for service of process in the State of New York located at 28 Liberty Street, New York, NY 10005.

21.    The Hard Rock Hotel New York is just one of nineteen hotels located in the United States owned and managed by Corporate Defendant Hard Rock International (USA), Inc.

22.    At all relevant times, Defendants operated the Hard Rock Hotel New York, including the Hard Rock Restaurants, through Corporate Defendant.

23.    At all relevant times, Corporate Defendant Hard Rock International (USA), Inc had an annual dollar volume of sales in excess of $500,000.

24.    Corporate Defendant Hard Rock International (USA), Inc is a covered "employer" within the meaning of the FLSA and NYLL.

25.    Corporate Defendant Hard Rock International (USA), Inc employed Plaintiffs and similarly situated employees.

26.    At all relevant times, Corporate Defendant Hard Rock International (USA), Inc maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

27.    At all relevant times, Corporate Defendant Hard Rock International (USA), Inc applied the same employment policies, practices, and procedures to all non-exempt employees at the Hard Rock Restaurants.

### Hard Rock Hotels Inc.

28.    Corporate Defendant Hard Rock Hotels Inc is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at

159 W 48th Street, New York, NY 10036 and an address for service of process located at Corporation Service Company, 80 State Street, Albany, New York, 12207.

29.    At all relevant times, Defendants operated The Hard Rock Hotel and the Hard Rock Restaurants through Corporate Defendant Hard Rock Hotels Inc.

30.    At all relevant times, Corporate Defendant Hard Rock Hotels Inc had an annual dollar volume of sales in excess of $500,000.

31.    Corporate Defendant Hard Rock Hotels Inc is a covered "employer" within the meaning of the FLSA and NYLL.

32.    Corporate Defendant Hard Rock Hotels Inc employed Plaintiffs and similarly situated employees.

33.    At all relevant times, Corporate Defendant Hard Rock Hotels Inc maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

34.    At all relevant times, Corporate Defendant Hard Rock Hotels Inc applied the same employment policies, practices, and procedures to all non-exempt employees at the Hard Rock Restaurants.

### HR Hotel NYC LLC

35.    Corporate Defendant HR Hotel NYC LCC is a foreign limited liability company organized under the laws of the State of New York with a principal place of business at 159 W 48th Street, New York, NY 10036 and an address for service of process in New York located at C T Corporation System, 28 Liberty, Street, New York, NY 10005.

36.    At all relevant times, Defendants operated the Hard Rock Restaurants through Corporate Defendant HR Hotel NYC LCC.

6

37.     At all relevant times, Corporate Defendant HR Hotel NYC LCC had an annual dollar volume of sales in excess of $500,000.

38.     Corporate Defendant HR Hotel NYC LCC is a covered "employer" within the meaning of the FLSA and NYLL.

39.     Corporate Defendant HR Hotel NYC LCC employed Plaintiffs and similarly situated employees.

40.     At all relevant times, Corporate Defendant HR Hotel NYC LCC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

41.     At all relevant times, Corporate Defendant HR Hotel NYC LCC applied the same employment policies, practices, and procedures to all non-exempt employees at the Hard Rock Restaurants.

### NYY Steak LLC

42.     Corporate Defendant NYY STEAK LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 1 E 161st Street, Bronx, New York 10451 and an address for service of process in New York located at C T Corporation System, 28 Liberty, Street, New York, NY 10005.

43.     At all relevant times, Defendants operated the Hard Rock Restaurants through Corporate Defendant NYY STEAK LLC.

44.     At all relevant times, Corporate Defendant NYY STEAK LLC had an annual dollar volume of sales in excess of $500,000.

45.     Corporate Defendant NYY STEAK LLC is a covered "employer" within the meaning of the FLSA and NYLL.

46.     Corporate Defendant NYY STEAK LLC jointly employed Plaintiffs and similarly situated employees.

47.     At all relevant times, Corporate Defendant NYY STEAK LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

48.     At all relevant times, Corporate Defendant NYY STEAK LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Hard Rock Restaurants.

### NYY Steak Manhattan, LLC

49.     Corporate Defendant NYY Steak Manhattan, LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 159 W 48th Street, New York, NY 10036 and an address for service of process in New York located at C T Corporation System, 28 Liberty, Street, New York, NY 10005.

50.     At all relevant times, Defendants operated the Hard Rock Restaurants through Corporate Defendant NYY Steak Manhattan, LLC.

51.     At all relevant times, Corporate Defendant NYY Steak Manhattan, LLC had an annual dollar volume of sales in excess of $500,000.

52.     Corporate Defendant NYY Steak Manhattan, LLC is a covered "employer" within the meaning of the FLSA and NYLL.

53.     Corporate Defendant NYY Steak Manhattan, LLC jointly employed Plaintiffs and similarly situated employees.

54.     At all relevant times, Corporate Defendant NYY Steak Manhattan, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

55.     At all relevant times, Corporate Defendant NYY Steak Manhattan, LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Hard Rock Restaurants.

### *Klauber Pinto*

56.     At all relevant times, Individual Defendant Klauber Pinto was the General Manager of the Hard Rock Restaurants.

57.     Individual Defendant Klauber Pinto is a covered "employer" within the meaning of the FLSA and NYLL.

58.     Individual Defendant Klauber Pinto employed Plaintiffs and similarly situated employees.

59.     At all relevant times, Individual Defendant Klauber Pinto had authority over personnel or payroll decisions and employment policies, practices, and procedures at the Hard Rock Restaurants.

60.     At all relevant times, Individual Defendant Klauber Pinto had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and conditions of their employment at the Hard Rock Restaurants, including their work assignments, work schedules, pay and responsibilities.

61.     At all relevant times, Individual Defendant Klauber Pinto had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the

managers and/or supervisors of Plaintiffs and similarly situated employees at the Hard Rock Restaurants.

62.    At all relevant times, Individual Defendant Klauber Pinto had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at the Hard Rock Restaurants.

63.    At all relevant times, Individual Defendant Klauber Pinto had the power to maintain employment records, including time and/or wage records of employees at the Hard Rock Restaurants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

64.    Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former non-exempt, hourly employees employed at the Hard Rock Restaurants owned, operated, and/or controlled by Defendants, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

65.    At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiffs and FLSA Collective Members the full and proper overtime wages for hours worked in excess of forty (40) per workweek and their policy of improperly retaining gratuities. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

66.     All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

67.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

68.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

69.     Plaintiffs bring the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former non-exempt, hourly employees employed at the Hard Rock Restaurants owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members"). The Class includes a subclass consists of tipped Class Members who had their tips improperly retained (the "Tipped Subclass").

70.     Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

71.     The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also

determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

72.     The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

73.     Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

74.     Plaintiffs and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay wages for off-the-clock work, and (ii) improperly retaining gratuities, in violation of the NYLL. Plaintiffs and the Tipped Subclass were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, in violation of the NYLL.

75.     Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

76.     Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

77.    Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members, and have no interests antagonistic to Class Members.

78.    Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

79.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

80.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

81.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class

Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

82.      Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

83.      Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

   a.   Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

   b.   Whether Defendants failed to pay regular or overtime Plaintiffs and Class Members for off-the-clock work;

   c.   Whether Defendants required Plaintiffs and Class Members to work off the clock for unused break time;

   d.   Whether Defendants failed to pay Plaintiffs and Class Members all service charges and gratuities for events;

   e.   Whether such service charges were gratuities as defined by the NYLL; and

   f.   Whether Defendants kept accurate records of the amounts of tips earned by Plaintiffs and the Tipped Subclass.

## STATEMENT OF FACTS

*Unpaid Wages and Gratuities (Plaintiffs, FLSA Collective Members and Class Members)*

84.      Plaintiff Jetnik Syla was initially hired by Defendants as a Server Assistant on or around June 13, 2022.  On August 31, 2022, Syla was promoted to Server.  Syla continued working

for Defendants in this capacity until the termination of his employment on or around October 17, 2023.  Throughout his employment, Syla was paid $19.00 per hour.

85.     From the start of his employment until around July 2023, Plaintiff worked five days per week, on Tuesdays, Wednesdays, Thursdays, Fridays and Saturdays. During this period, Plaintiff worked at most three dinner shifts and at least two double shifts.  Dinner shifts were generally between 3:30 p.m. to closing, which was usually between 11:00 p.m. to 1:00 a.m. Double shifts were from 10:30 a.m. to 9:30 p.m., though he would sometimes be expected to work until closing on double shifts.  Thus, during this period, Plaintiff worked at least forty-seven and a half (47.5) hours per week, though he often worked far more.

86.     Starting around July 2023, the restaurant stopped serving lunch.  Furthermore, Defendants reduced Plaintiff's schedule to four days.  Therefore, Syla only worked dinner shifts, for a total of around thirty-four (34) hours per week.

87.     Plaintiff Besnik Berisha worked for Defendants as a server from March 17, 2022 until September 1, 2023.  Throughout his employment Berisha was paid $19.00 per hour.

88.     From the date of Berisha's hiring until around May 2022, he worked the dinner shift five days per week for a total of around forty-two and a half (42.5) hours per week.  Starting in or around May 2022 until around December 2022, Plaintiff worked two to three days per week for a total of around twenty-five and a half (25.5) hours per week.  From December until the termination of his employment, Plaintiff only worked one to two days per week.

89.     Throughout the relevant period, Defendants engaged in a policy of time shaving, whereby Plaintiff, FLSA Collective Action Members, and Class Members were not paid for all hours worked, including overtime hours.

90.     Namely, from the start of Plaintiffs' employment, until around February 2023, Defendants automatically deducted a thirty-minute break from their time, even though they were generally unable to take an uninterrupted meal break lasting longer than twenty (20) minutes.

91.     Starting around March 2023, Defendants changed their policy so that front of the house employee took their meal breaks at the same time and were required to clock out.  However, at least every other day, Plaintiffs were required to perform side work, such as cleaning and polishing silverware during their breaks, and were not permitted to clock back in.  Furthermore, servers were often required to read secret shoppers reviews during their family meal breaks, and were subsequently quizzed on them.  Therefore, on at least half the days Plaintiffs, FLSA Collective Action Members and Class Members worked, they were required to perform 30 minutes of work off the clock for which they were not compensated.

92.     Similarly, before clocking-in, Plaintiffs, FLSA Collective Members and Class Members were required to pick up their uniforms, proceed to the locker room and change.  This process usually took around 15-20 minutes, during which Defendants failed to provide any compensation.  In fact, on a number of occasions, Plaintiffs clocked-in upon arriving at the restaurant and before changing into their uniforms, however, managers would manually adjust their time to deprive them of their lawfully due compensation.

93.     Additionally, Defendants required Plaintiffs, FLSA Collective Members and Class Members to complete training modules, titled "School of Hard Rock."  During the course of Plaintiffs' employment, they were required to complete around four training modules lasting about three to four hours each.  Despite this training being mandatory, Defendants failed and refused to compensate Plaintiffs, FLSA Collective Members and Class Members for this time.

94.     Throughout Plaintiffs' employment, Defendants improperly retained tipped employees' tips.  A least once per week there was a "buyout" or private event in which Plaintiffs, FLSA Collective Members and Class Members worked as servers.  Upon information and belief, a service charge was applied to customer invoices which was supposed to be distributed to the wait staff.  Customers would also leave tips for wait staff in addition to the service charge. For the first six months of Plaintiffs' employment, until around January 2023, Defendant Pinto improperly retained the additional tip by failing to distribute it to waitstaff.

95.     Moreover, there were often additions made to the customer's order prior to the event, or the event time was extended, which would result in a corresponding increase to the service fee.  However, Defendants failed to pay the additional service fee to tipped employees.

96.     Defendants admitted to the above during a staff meeting by Manager Jonathan Elinoff, however, Defendants failed and refused to reimburse Plaintiffs, FLSA Collective Members and Class Members for the improperly retained gratuities.  Furthermore, Plaintiffs and tipped employees would perform their own calculation of the service fee and determined that they were being significantly underpaid.

97.     Additionally, Plaintiffs noticed significant discrepancies in the tips they received during regular meal service.  Moreover, Defendants intentionally failed and refused to provide Plaintiffs, FLSA Collective Members and Class Members with tip sheets showing the breakdown of tips earned and the allocation of tips within the tip pool, despite multiple requests from tipped employees, including Plaintiffs.  On at least one occasion, on or around May 14, 2023, a tip sheet was left on a table, when Plaintiffs looked it over, they immediately noticed that tips from tables that Syla served were not being recorded.  This resulted in increased protests from tipped

employees for Defendants to provide a written record of daily tips, yet Defendants continued to refuse to do so.

98.    In addition, when a service charge was applied, or a meal was comped, managers would improperly retain any additional tips.  Specifically, managers, including Pinto Elinoff, would "zero out" the tip in the POS system, thereby depriving serves of the gratuity.  In other instances, Defendants would manually reduce the check amount on comped meals so to improperly reduce earned tips.  When a server approached Pinto, he responded that he is keeping the tip because the server "didn't deserve it."  Plaintiffs, FLSA Collective Members and Class Members made multiple complaints about this issue to human resources, however, their complaints were never addressed and the situation continued unabated.

99.    Plaintiffs, FLSA Collective Members and Class Members were further required to pool their tips with bartenders, against Plaintiffs' objections.  However, Defendants improperly retained all cash bar tips.  On the tips sheets that Plaintiffs were able to review, they saw that the cash bar amount was always $0, which was impossible.

100.    Based on Plaintiffs' observations and conversations with co-workers at the Hard Rock Restaurants, Defendants failed to pay Plaintiff, FLSA Collective Members and Class Members all due regular and overtime wages.

101.    Based on Plaintiffs' observations and conversations with co-workers at the Hard Rock Restaurants, Defendants failed to track daily tips earned by Plaintiff, FLSA Collective Members and Class Members, and failed to keep accurate records thereof.

102.    Based on Plaintiffs' observations and conversations with co-workers at the Hard Rock Restaurants, Defendants kept and/or allowed managers and supervisors to keep a portion of the tips that Plaintiffs and Class Members earned from customers.

103.    Defendants knowingly and willfully operated their business with a policy of failing to pay all due regular and overtime wages Plaintiffs, FLSA Collective Members and Class Members, in violation of the FLSA and NYLL.

104.    Defendants knowingly and willfully operated their business with a policy of keeping a portion of the tips that Plaintiffs, tipped FLSA Collective Members and Class Members earned from customers and/or distributing a portion of the tips to managers, supervisors and other employees who are not entitled to receive tips under the FLSA and NYLL.

### Retaliation (Plaintiff Besnik Berisha)

105.    Plaintiff Besnik Berisha was an exemplary employee during his employment with Defendants. Mr. Berisha excelled in his position as one of the top servers and consistently received positive feedback from guests and his colleagues.

106.    About two months into his employment, Berisha began complaining about Defendants' employment policies and practices, including Defendants' unlawful wage and hour polices.  In response, Defendants repeatedly retaliated against Plaintiff by taking him off the schedule, and then constructively terminating his employment.

107.    This began as early as May 2022, when in response to Plaintiff's complaint about employees being sent home immediately after completing their side work, he was only assigned one shift the following week.

108.    Despite the threats and retaliation, Plaintiff persevered and continued to raise complaints on behalf of himself and other employees at the Hard Rock Restaurants.  During a staff meeting in October 2022, Plaintiff complained about Defendants' failure to provide tip sheets and Defendants' unlawful tip retention policies.  In response, Defendants completely took Plaintiff off the schedule for six weeks.  When Plaintiff raised formal complaints with Defendants' human

resources department and with Defendant Pinto, they agreed to put him on the schedule, 2-3 days per week.

109.    When Plaintiff again complained about tip retention during a staff meeting on December 9, 2022, he was shouted at by Mr. Elinoff, who told Plaintiff that he was part of the "Albanian mafia," called him an "Albanian piece of shit," and that he "comes from a shithole country with no democracy and in America we do things differently."  Elinoff further warned Plaintiff to "think long-term about this and how it's going to play out."  He then grabbed his groin area and said, "people with balls, we talk to each other, we work shit out."  Elinoff directly warned Plaintiff by stating, "every time you [Plaintiff] speak out against wage issues, it back fires on you, like the last time where you were taken off the schedule."  He then ended the conversation by stating that he made these statements in order to protect Plaintiff, and that Defendant Pinto wants Plaintiff fired.

110.    In mid-January 2023, Plaintiff once again complained about Defendants' tip policies.  In response, Defendant Pinto told Plaintiff that he was being terminated, although Defendants ultimately reversed this decision.

111.    By February 2023, Defendants were systematically terminating employees who had previously complained about their unlawful wage and hour policies.  Furthermore, during a meeting on February 10, 2023, in response to complaints about tip policies, a manager, Edgar (LNU), stated "My job, this business, is not to make things fair for you, I'm not here to make things fair for you but to run a business, no one is going to make things fair, life is not fair, your job is not going to be fair, I assure you."

112.    On May 13, 2023, in response to Plaintiff's complaints, including repeated complaints about being required to change into his unform before clocking out, Plaintiff was once

again taken off the schedule entirely.  Thus, on May 16, 2023, Plaintiff sent a formal complaint to human resources stating that he was essentially terminated in retaliation for his complaints. When he received no response, he sent a follow up on May 22, 2023.  Shortly thereafter, Plaintiff was invited to a meeting with human resources representatives Lidia Zotowska and Lisa McCarrol in which he described in detail the wage and hour issues affecting employees and the concerted effort by Defendants to retaliate by reducing his hours, and at times, completely taking him off the schedule.  Defendants ultimately agreed to put Plaintiff back on the schedule, but again, only working one day per week.

113.    During the last two months of Plaintiff's employment, he was subjected to near daily bullying and harassment from his managers, including from Defendant Pinto.  Furthermore, Defendants purposely gave Plaintiff the most difficult sections, delayed the printing of his end of night reports forcing him to be the last employee waiting to leave at the end of his shift, and making Plaintiff redo menial tasks multiple times.  By September 1, 2023 the situation had become completely untenable and Plaintiff felt he had no other choice but to resign.

114.    Plaintiff was thus constructively terminated in direct retaliation for his complaints regarding Defendants' unlawful wage and hour policies and practices.

115.    As a result of Defendants' retaliatory conduct, Plaintiff has suffered, and continues to suffer lost income as well as severe emotional distress and mental anguish, including, but not limited to, grief, shame, humiliation, stress, anxiety, loss of self-esteem and self-confidence.

### STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### *Violations of the Fair Labor Standards Act*
### *(Plaintiffs and FLSA Collective Members)*

116.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

117.    The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and FLSA Collective Members.

118.    Defendants failed to pay Plaintiffs and FLSA Collective Members the full and proper overtime wages for all hours worked in excess of forty (40) per workweek, in violation of the FLSA.

119.    Defendants failed to pay wages to Plaintiffs and FLSA Collective Members for off-the-clock work, in violation of the FLSA.

120.    Defendants failed to pay wages to Plaintiffs and FLSA Collective Members by time-shaving the hours worked by employees, in violation of the FLSA.

121.    Defendants unlawfully kept and/or allowed managerial or supervisory employees to keep a portion of tips that Plaintiff and tipped FLSA Collective Members earned from customers in violation of subsection 203(m) of the FLSA. See, 29 C.F.R. § 531.52.

122.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Members of their rights under the FLSA.

123.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Members the lawful overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and FLSA Collective Members.

124.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

125.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and FLSA Collective Members have suffered damages by being denied minimum wage and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

126.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Members and the actual compensation paid to Plaintiffs and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## SECOND CAUSE OF ACTION
### *Violations of the New York Labor Law*
### *(Plaintiffs and the Class)*

127.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

128.    At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

129.    Defendants failed to pay full and proper wages, including overtime wages to Plaintiffs and Class Members for off-the-clock work, in violation of the NYLL.

130.    Defendants failed to pay full and proper wages, including overtime wages to Plaintiffs and Class Members by time-shaving the hours worked by employees, in violation of the NYLL.

131.    Defendants unlawfully retained and/or allowed managerial or supervisory employees to keep a part of the gratuities received by Plaintiff and Class Members in violation of NYLL, Article 6, § 196-d, and the supporting New York State Department of Labor Regulations.

132.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiffs and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

133.    Defendants failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

134.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid wages for off-the-clock work, unpaid wages due to time-shaving, unpaid spread-of-hours premium, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

## THIRD CAUSE OF ACTION
### *Retaliation in Violation of the Fair Labor Standards Act*
### *(Plaintiff Besnik Berisha)*

135.    Plaintiff Besnik Berisha realleges and incorporates by reference all allegations in all preceding paragraphs.

136.    Plaintiff Besnik Berisha is an employee and a protected person within the meaning of the FLSA and Defendants are covered employers under the FLSA.

137.    The FLSA prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the FLSA. 29 U.S.C. § 215(a)(3).

138.    Defendants unlawfully retaliated against Plaintiff Besnik Berisha on the basis of his protected activities under the FLSA by reducing the number of days he was scheduled to work

each week and by constructively terminating his employment shortly after he made a number of internal complaints regarding unpaid wages.

139.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff Besnik Berisha has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

140.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff Besnink Berisha has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

141.    At all relevant times, Defendants' unlawful discriminatory conduct was knowing, malicious, willful, and/or in reckless disregard of Plaintiff Besnik Berisha's protected rights under the FLSA, for which he is entitled to an award of punitive damages.

142.    Due to Defendants' violation of FLSA, namely, retaliation against Plaintiff Besnik Berisha for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages for lost wages; (2) damages for emotional distress, (3) liquidated damages, (4) punitive damages, and (5) attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
***Retaliation in Violation of the New York Labor Law***
***(Plaintiff Besnik Berisha)***

143.    Plaintiff Besnik Berisha realleges and incorporates by reference all allegations in all preceding paragraphs.

144.    Plaintiff Besnik Berisha is an employee and a protected person within the meaning of the NYLL and Defendants are covered employers under the NYLL.

145.    The NYLL § 215 prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the NYLL.

146.    Defendants unlawfully retaliated against Plaintiff Besnik Berisha on the basis of his protected activities under the FLSA by reducing the number of days he was scheduled to work each week and by constructively terminating his employment shortly after he made a number of internal complaints regarding unpaid wages.

147.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff Besnik Berisha has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

148.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff Besnik Berisha has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

149.    At all relevant times, Defendants' unlawful discriminatory conduct was knowing, malicious, willful, and/or in reckless disregard of Plaintiff Besnik Berisha's protected rights under the NYLL, for which he is entitled to an award of punitive damages.

150.    Due to Defendants' violation of NYLL, namely, retaliation against Plaintiff Besnik Berisha for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages for lost wages; (2) damages for emotional distress, (3) liquidated damages, (4) punitive damages, and (5) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Members and the Class, respectfully request that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. Certification of this case as a class action pursuant to Rule 23;

c. Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

d. An award of unpaid overtime wages due under the FLSA and NYLL;

e. An award of unlawfully retained tips due under the FLSA and NYLL;

f. An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the FLSA or NYLL;

g. An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff Besnik Berisha for all monetary and/or economic damages, including loss of past and future income, compensation and benefits;

h. An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff Besnik Berisha for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress;

i. An award of punitive damages against Defendants for violation of Plaintiff Besnik Berisha's rights, in an amount to be determined at trial;

j. Pre-judgment and post-judgment interest;

k. Reasonable attorneys' fees and costs of this action;

l.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

m.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

n.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:  October 30, 2024                    Respectfully submitted,

**BROWN, KWON & LAM LLP**

By:      */s/ William Brown*

William Brown, Esq.
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiffs*